UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

IMMANUEL LLC                                          Case No. HT 10-11585
                                                     Chapter 7
              Debtor.                                Hon. Scott W. Dales

_____/

GENERATIONS MANAGEMENT LLC,

        Plaintiff,

vs.                                                  Adv. Pro. No. 12-80048

KELLY M. HAGAN AND NORTHWESTERN
BANK,

        Defendants.

_____/

**OPINION & ORDER REGARDING NORTHWESTERN BANK'S
MOTION FOR SUMMARY JUDGMENT**

I. INTRODUCTION

Generations Management LLC ("Generations") has served as the asset manager for

Immanuel LLC (the "Debtor") both before and after the Debtor filed its voluntary chapter 11

bankruptcy petition with the court on September 24, 2010.  The Debtor's assets, which

Generations managed until the case was converted, consist mostly of real estate and related

interests in northern Michigan.

After the court converted the Debtor's case to chapter 7, Generations filed its Application

for Administrative Expense (the "Application," Base Case DN 389), seeking approval of

$65,819.90 for post-petition asset management services provided during the chapter 11 phase of the bankruptcy case.  The Application drew objections from chapter 7 trustee Kelly M. Hagan (the "Trustee") and Northwestern Bank ("Northwestern").  The Trustee has since settled her objection, but Northwestern's objection remains.

Northwestern opposes the Application because (1) Generations failed to seek and obtain court approval for serving as the Debtor's asset manager under § 327;[1] and (2) Generations has a disqualifying conflict of interest with the bankruptcy estate.  Generations, in contrast, contends that it is entitled to an administrative priority claim under § 503(b)(1)(A) because its services benefitted the estate.

Although disputes about administrative claims ordinarily take the form of a contested matter under Rule 9014, the court elected to treat the Application as an adversary proceeding to afford the parties additional procedural protections.  Northwestern filed its Motion for Summary Judgment (the "Motion," DN 29) and Generations filed its response (the "Response," DN 43). On April 5, 2013, the Honorable Jeffrey R. Hughes heard oral argument on the Motion and took the matter under advisement.  Thereafter, Judge Hughes retired from judicial service, and the Clerk reassigned the adversary proceeding.[2]

## II. JURISDICTION AND RELATED MATTERS

The court has jurisdiction over the Debtor's chapter 7 case pursuant to 28 U.S.C. § 1334(a).  That case and this adversary proceeding have been referred to this court by the United

---

[1]  Although not articulated in its motion or brief, Northwestern clarified in its oral argument that Generations should have obtained court approval for its appointment pursuant to 11 U.S.C. § 327(a).

[2] The court has reviewed the Motion, with its accompanying brief and supporting exhibits, the Response and its supporting exhibits, and the transcript of the parties' April 5, 2013 oral argument (DN 45), and certifies that it has sufficient familiarity with the record in this matter to resolve the Motion.  *See* Fed. R. Bankr. P. 9028; Fed. R. Civ. P. 63.

States District Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).   This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Because Generations asserts a claim against property of the estate, this proceeding involves the allowance or disallowance of a claim, and to this extent "the bankruptcy court's authority is at its constitutional maximum." *Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012).[3]

## III. ANALYSIS

### A. Summary Judgment Standard

A court should enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Either party may support its factual position by "citing to particular parts of materials in the record," such as depositions, affidavits, stipulations, admissions, or other such materials.  Fed. R. Civ. P. 56(c)(1).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *See Hatchett v. United States*, 330 F.3d 875, 880 (6th Cir. 2003) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A genuine issue for trial exists, and summary judgment is not appropriate, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Hatchett,* 330 F.3d at 880 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party has met its summary judgment burden "by 'showing' ... that there is an

---

[3]  The parties have acquiesced in the court's entry of a final judgment by failing to object within the time prescribed in the February 7, 2012 Scheduling Order and Order Converting Contested Matter Into Adversary Proceeding (DN 2).  *Compare Waldman*, 698 F.3d at 918 (litigant cannot waive structural protection of Article III) with *Executive Benefits Ins. Agency v. Arkinson (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 566 (9th Cir. 2012) ("The waivable nature of the allocation of adjudicative authority between bankruptcy courts and Article III courts is well established"), *cert. granted*, 133 S. Ct. 2880 (U.S. June 24, 2013).  Of course, an order denying a motion for summary judgment is not a final order.

absence of evidence to support the non-moving party's case," and that the moving party is entitled to judgment under the facts, the non-moving party can avoid summary judgment only by presenting specific evidence that raises a genuine issue for trial or by objecting to a fact that is not supported by admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c)(2). In opposing a properly supported motion, a party cannot "rest upon its ... pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (*citing Matsushita Elec. Indus. Co.*, 475 U.S. at 586). Successful opposition requires more than a "scintilla" of evidence, *Anderson*, 477 U.S. at 252, or simply "some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The dispute must be "genuine," not fanciful.

B.  Material Facts

There is no dispute that the Debtor's manager, Waypoint Management LLC ("Waypoint"), and Generations entered into an Asset Management Agreement on March 1, 2006, pursuant to which Generations agreed to serve as the Debtor's asset manager. *See* Application at Exhibit A.[4] On September 24, 2010, the Debtor commenced a chapter 11 bankruptcy case which was later converted to chapter 7 on June 28, 2011.

In its Application, Generations states that it was directed by Waypoint to be "an independent contractor to provide administrative, asset management, and investment management services for the Debtor." *Id*. at 1. However, in its Response, Generations claims that its services were "ministerial functions," and it had "no authority to make strategic decisions

---

[4]  The court notes that although "Exhibit A" attached to the Application is unsigned and marked "DRAFT," Generations states in its Response that Waypoint and Generations have been operating under this unsigned agreement since the Debtor's inception in 2006. *See* Response at ¶ 3.

[for the Debtor]," but rather that "all such decisions are made by Waypoint."  Response (DN 43) at 2 (*citing* Declaration of Keith M. Nielson at ¶¶ 3, 4).

Northwestern alleges that Generations was involved in effecting allegedly fraudulent transfers of real estate made by the Debtor before and after the petition date for "little or no consideration," resulting in the Debtor's insolvency. *See* Northwestern Brief Supporting Motion for Summary Judgment (DN 29) at 2-3.  Specifically, Northwestern alleges that Generations drafted deeds for the transferred real estate; served as the asset manager for transferees of the real estate; placed mortgages on the transferred properties; and served as asset manager for Artesian Investments, LLC, a mortgagee for the transferred properties.  *Id*. at 3-4.  Accordingly, Northwestern argues that Generations forfeited any right to compensation from the estate by actively working against the estate.

C.  Northwestern's Argument Requiring Court Approval Under § 327

The court's analysis begins with the language of § 327(a) which provides as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent *or assist the trustee in carrying out the trustee's duties under this title*.

11 U.S.C. § 327 (emphasis added).  In a chapter 11 case, the debtor-in-possession "shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter" including the authority to "operate the debtor's business." 11 U.S.C. §§ 1107 and 1108.

Generally speaking, if a professional person is employed to represent or assist the trustee or debtor-in-possession in performing duties that would otherwise qualify as functions and duties

of the debtor-in-possession, that professional must seek and obtain court approval to be employed, and be paid, by the estate.  11 U.S.C. § 327(a); *see also In re Seatrain Lines, Inc.,* 13 B.R. 980, 981 (Bankr. S.D.NY. 1989).   Section 327 specifically requires appointment of "attorneys, accountants, appraisers, auctioneers . . ." but it also includes "other professionals." The statutory framework and the principle of *ejusdem generis* together suggest that the "other professionals" must be akin to or "of the same kind as" the specifically enumerated professionals.  Courts have struggled to determine, however, who qualifies as a "professional person" under § 327(a).  In their briefs, both parties have directed the court to cases identifying specific entities that qualify as "professional persons" under § 327(a), and other entities that do not. Notably, all of these cases depend largely upon particular facts, including the specific duties performed by the entity at issue.[5]

The court cannot, at this time, make a determination as to whether Generations's role and services require court approval under § 327(a).  First, the title of "Asset Manager" is vague and not very helpful.  A custodian manages assets, but so does a realtor. The court routinely requires approval of the appointment of realtors who assist trustees and debtors-in-possession in disposing of assets.

Second, some of the delineated duties required of Generations in the unsigned Asset Management Agreement could rise to the level of requiring a disinterested professional and thus court approval under § 327; other duties, however, are more ministerial in nature.   The declaration of Mr. Nielson, though conclusory, tends to emphasize the ministerial nature of

---

[5]  Cases cited by Northwestern as finding applicant to be a "professional person" requiring appointment under §327: *In re Neidig Corp.*, 117 BR 625 (Bankr. D. Colo. 1990) (radio station operator); *In re Marion Carefree Ltd. P'ship*, 171 BR 584 (Bankr. N.D. Ohio 1994) (retirement center manager); *In re Metropolitan Hosp.*, 119 BR 910 (Bankr. E.D. Pa. 1990) (specialized collection agency).  Cases cited by Generations finding applicant is not a "professional person" requiring appointment under §327:  *In re Park Ave. Partners Ltd. P'ship*, 95 B.R. 605 (Bankr. E.D. Wis. 1988) (property manager ); *In re Livore*, 473 B.R. 864 (Bankr. D.N.J. 2012) (property management company*); In re Princeton Square Assocs., L.P.*, 201 B.R. 9 (Bankr. S.D.N.Y. 1996) (real property managing agent).

Generations's duties, perhaps to challenge the necessity of retention, but also at the risk of undermining the necessity of Generations's contributions. If the tasks were so perfunctory, perhaps Waypointe should have performed them without agreeing to pay its affiliate to do so.[6]

On the other hand, given that the Debtor's primary business was to manage real estate assets, on a more-developed record the court might plausibly conclude that Generations assisted the Debtor in performing duties typically performed by a debtor-in-possession, using professional experience, judgment, and discretion affecting the exercise of those duties, thereby warranting court approval of retention. A complete record that sheds light on the role that Generations actually played will assist the court in reaching a just resolution. At present, however, the equivocation in the record precludes the court from deciding whether § 327 applies, and so the court will deny Northwestern's Motion for Summary Judgment in this respect.

D.  Northwestern's Conflict Argument

Northwestern's argument that Generations has a conflict of interest with the Debtor (evidenced by the applicant's documenting or otherwise effecting allegedly fraudulent transfers) casts doubt on the disinterestedness of Generations, and potentially has a bearing on Northwestern's § 327 argument. It also has implications for the allowance of administrative expense status irrespective of any appointment requirement under § 327 to the extent it suggests that the damage Generations caused outpaces whatever benefits it bestowed. To some extent, Northwestern is making a set-off argument.

Because Generations seeks allowance of its administrative claim against the estate under § 503(b)(1)(A), the court must consider that statute. It provides in relevant part:

---

[6] This court, like many, closely scrutinizes insider transactions. *Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 745 (6th Cir. 2001).

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--

(1)(A) the actual, necessary costs and expenses of preserving the estate including--

(i) wages, salaries, and commissions for services rendered after the commencement of the case . . . .

11 U.S.C. § 503(b).  In order to receive payment of an administrative claim, the claimant must have provided a post-petition benefit to the estate.  This standard has been articulated by the Sixth Circuit as follows:

> [A] debt qualifies as an "actual, necessary" administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate. *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir. 1976) and *Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir. 1984)).  The benefit to the estate test limits administrative claims to those where the consideration for the claim was received during the post-petition period.

*PBGC v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir. 1997). Although there is no dispute that Generations is seeking compensation for its post-petition activities and that it dealt with Waypoint as the representative of the estate, whether Generations engaged in conduct that benefited or harmed the estate is a question of fact.

Northwestern has not contended in its Motion that Generations's fees were unreasonable or inconsistent with the market, or for that matter, duplicative or otherwise unnecessary.  These issues remain open for decision.  Rather, Northwestern's Motion suggests that the harm Generations allegedly caused by drafting the deeds and mortgages at issue in the fraudulent conveyance proceedings, or the performance of services for initial and subsequent transferees, far offsets the benefits that Generations may have bestowed on the estate.

To grant the Motion, however, the court would need to determine that Generations harmed the estate in an amount exceeding the $65,819.90 it is claiming.  This would require a finding that Generations caused the harm (by drafting the deeds, for example) in some specified amount.  The court would then deduct the quantified harm from the possible benefits Generations provided, to see whether the account balance favors Generations.  The court cannot make these findings of cause and effect on the presently bare record.

It is tempting to ignore the corporate distinctions between Generations, Waypointe, and the Debtors' principals who may have been involved in transferring or receiving the Debtor's assets, and simply infer that Generations caused the harm in an amount exceeding its administrative claim.  Perhaps at trial, after considering the evidence and observing witnesses, the court will reach that conclusion.  On a motion for summary judgment, however, the court must draw inferences against the moving party.

For these reasons, the court will deny Northwestern's Motion for Summary Judgment as to this portion of its argument.


## IV. CONCLUSION & ORDER

For the reasons just stated, the court will deny Northwestern's Motion for Summary Judgment.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 29) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve this Opinion and Order upon Frederick R. Bimber, Esq., Timothy A. Fusco, Esq., Kevin M. Smith, Esq., and all ECF registered users in this case, pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4.


**IT IS SO ORDERED.**

**Dated October 4, 2013**



Scott W. Dales
United States Bankruptcy Judge